IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2001

## BARTON L. HAWKINS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-22204     W. Otis Higgs, Jr., Judge**

---

**No. W2001-00738-CCA-R3-PC - Filed January 18, 2002**

---

A Shelby County jury convicted the Petitioner of rape, and the trial court sentenced him as a Range I violent offender to eight years and one day in the Tennessee Department of Correction. The Petitioner subsequently filed a petition for post-conviction relief. The trial court conducted a post-conviction hearing and denied relief. The Petitioner now appeals the denial of post-conviction relief, arguing that he received ineffective assistance of counsel at trial. Specifically, he contends that his counsel (1) failed to aggressively question the victim regarding consent; (2) failed to object to the admission of expert testimony; (3) failed to aggressively cross-examine the prosecution's expert witness concerning her qualifications and her testimony in chief; (4) failed to prepare or investigate the case; (5) failed to object to "prejudicial witness examination and argument regarding the swapping of" a car battery; (6) failed to discuss defense strategy with the Petitioner; (7) failed to question the Petitioner about his knowledge of the victim's previous sexual behavior; (8) failed to review the transcript from the Petitioner's preliminary hearing; (9) failed to offer evidence of an injury to the Petitioner's hand; (10) failed to argue in closing the weight the jury should give testimony by the State's expert witness and failed to object to the State's definition of reasonable doubt in closing arguments; and (11) "failed to raise all probable issues on appeal." Having reviewed the record, we conclude that the Petitioner's representation was not deficient and therefore affirm the judgment of the trial court denying post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Robert Little, Memphis, Tennessee, for the Appellant, Barton L. Hawkins.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesale, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

In 1997, a Shelby County jury convicted the Petitioner, Barton L. Hawkins, of rape. The trial court sentenced him as a Range I violent offender to eight years and one day in the Tennessee Department of Correction. On direct appeal, this Court affirmed the Petitioner's conviction and sentence. See State v. Barton L. Hawkins, No. 02C01-9711-CR-00430, 1998 WL 784743 (Tenn. Crim. App., Jackson, Nov. 12, 1998).[1]

On November 19, 1999, the Petitioner filed a pro se petition for post-conviction relief. Following appointment of counsel to represent the Petitioner in post-conviction proceedings, the Petitioner subsequently filed an amended petition for post-conviction relief and a second amended petition for post-conviction relief. On November 30, 2000, the trial court conducted a post-conviction hearing. On February 27, 2001, the trial court entered its "Findings of Fact and Conclusions of Law on Petition for Post-Conviction Relief" and denied post-conviction relief. It is from the trial court's denial of post-conviction relief that the Petitioner now appeals.

The Petitioner contends that he received ineffective assistance of counsel at trial. He argues that he is entitled to post-conviction relief because his attorney: (1) failed to aggressively question the victim regarding consent; (2) failed to object to the admission of expert testimony; (3) failed to aggressively cross-examine the prosecution's expert witness concerning her qualifications and her testimony in chief; (4) failed to prepare or investigate the case; (5) failed to object to "prejudicial witness examination and argument regarding the swapping of" a car battery; (6) failed to discuss defense strategy with the Petitioner; (7) failed to question the Petitioner about his knowledge of the victim's previous sexual behavior; (8) failed to review the transcript from the Petitioner's preliminary hearing; (9) failed to offer evidence of an injury to the Petitioner's hand; (10) "failed to argue in closing the weight the jury should give the State's expert witness's testimony" and failed to object to the State's definition of "reasonable doubt" in closing arguments; and (11) "failed to raise all probable issues on appeal." Having reviewed the record in this case, we conclude that the Petitioner was not denied effective assistance of counsel at trial and therefore affirm the judgment of the trial court.

## I. FACTS

### A. Facts Presented at Trial

The facts underlying the Petitioner's conviction were summarized by this Court on direct appeal as follows:

> The victim testified that she was driving home when an unidentified man flagged her down to help the appellant, whose truck had broken down. The problem was apparently a defective battery. After a failed attempt to jump-start the truck, the victim agreed to drive the appellant to his home where he said he could get another battery. The victim stated that upon reaching the appellant's home, the appellant

---

[1] An application for permission to appeal to the Tennessee Supreme Court was not filed in this case. See Tenn. R. App. P. 11.

tried to kiss her. She resisted and a struggle ensued, ending with the appellant dragging her "kicking and screaming" into his house. Neighbors of the appellant corroborated that they heard a woman's screams coming from the appellant's home on the night of the rape.

The victim testified that, once inside his home, the appellant held up a bandanna and ordered her to sit. The victim asked to use the restroom, and the appellant permitted her but entered the restroom with her to watch. He then ordered her to undress and took her to another room where he vaginally raped her. He also demanded oral sex, and the victim complied. In response to the defense's question why she did not fight or struggle during the rape, the victim stated that she was afraid the appellant would kill her. She stated that she did not consent.

Immediately after the rape, the appellant hugged the victim and told her he was sorry. He then drove the victim, in her vehicle, to a gas station where he stopped and went inside, leaving the victim alone in the vehicle for approximately five to ten minutes. The appellant stated that he left the vehicle running with the keys in the ignition. There were other people around the station and the area was well lit. The victim did not attempt to escape or ask for help because, she said, she was afraid that the appellant would kill or hurt her. The appellant then drove the victim back to his truck, switched his battery for hers, and let her go.

After reporting the incident some two hours later, the victim was taken to the Memphis Sexual Assault Resource Center where she was examined. Margaret Aiken, the examining nurse, testified that she found scratches on the victim's upper left arm and left clavicle. She also found genital trauma of the posterior fourchette and an abrasion or scrape of that area. These injuries, Aiken testified, were consistent with forced penetration and are not ordinarily associated with consensual sex. When pressed, however, Aiken could not rule out the possibility that such injuries could result from consensual sex. Aiken's examination revealed no further injuries. The victim, however, testified that she had also sustained bruises on her leg, chest, and arms; and the state introduced photographs of these bruises that had been taken two days after the rape.

The appellant's version of the facts were that although he did attempt to have sex with the victim, it was consensual. He explained the scratches on the victim as the result of her becoming caught in his climbing rose bush. He explained her screams as the result of his dog frightening the victim.

Id. at *1-2.

## B. Testimony at Post-Conviction Hearing

-3-

At the post-conviction hearing, the Petitioner testified that his attorney did not adequately investigate or prepare his case. He stated that his counsel "failed to investigate the plaintiff's history. Failed to investigate the plaintiff's friends. Failed to investigate the crime scene. Failed to investigate the personal injury." He specifically complained that his attorney did not interview Margaret Aiken,[2] the nurse who examined the victim on the night of the crime, prior to trial. The Petitioner maintained that if his counsel had interviewed Aiken prior to trial, counsel would have fully understood Aiken's "opinion" about the genital trauma and abrasion that the victim sustained, and counsel could have more effectively cross-examined Aiken regarding the issue of "forced entry." The Petitioner also testified that his counsel should have sought an expert to rebut Aiken's testimony.

In addition, the Petitioner testified that his attorney failed to discuss defense strategy with him. He stated that he and his counsel did not have a good rapport during trial preparations. He explained, "I felt [that my attorney] was dishonest. . . . I basically was wanting to get another lawyer." However, the Petitioner also admitted that their strained relationship "had a lot to do with [the Petitioner]." He admitted that he was not completely honest with his attorney, stating, "I didn't share with him what actually happened."

The Petitioner further testified that he asked his attorney to obtain a copy of the preliminary hearing transcript so that he could examine it for inconsistencies in the victim's testimony. However, he claimed that his attorney failed to obtain the transcript. The Petitioner reported that the victim provided testimony at the preliminary hearing that was inconsistent with her testimony at trial regarding whether her keys were in her car after the crime; whether the Petitioner accidentally knocked her glasses off of her head during the incident; whether the Petitioner "dragged" her into a room in his house or whether she walked into the room; and whether the victim fought the Petitioner during the rape.

The Petitioner testified that he asked his lawyer to suppress the statement that he made to police, but that his lawyer "refused to do that." He claimed that his attorney "just mentioned that it wouldn't do any good" and "didn't try."

The Petitioner also maintained that his attorney should have objected to the admission of testimony by Margaret Aiken. He complained that his attorney did not object to the prosecution and the trial court referring to Ms. Aiken as "Dr. Aiken," stating, "She wasn't but a nurse. She had a Doctor's degree in mental health." The Petitioner insisted that the fact that all parties involved referred to Ms. Aiken as "Dr. Aiken" caused the jurors to think that "she was a medical expert." In addition, the Petitioner complained that his attorney should have objected to Aiken's testimony after Aiken admitted that she couldn't "rule . . . out" the possibility of consensual sex between the Petitioner and the victim. According to the Petitioner, Aiken testified, "I don't deal with people

---

[2] We note that the nurse is referred to in the opinion of this Court on direct appeal as "Margaret Aiken," while she is referred to in the record of the post-conviction proceedings as "Margaret Akin." For the sake of consistency, we will use the spelling of Ms. Aiken's name that was used by this Court on direct appeal.

involved with consensual sex as far as my personal knowledge in observing these injuries." The Petitioner asked, "[I]f she didn't have experience in any consensual sex, how could she know whether an abrasion occurred or not? How could she say . . . that it was consistent with forced entry?" The Petitioner also complained that his lawyer should have "asked for cautionary instructions" regarding Ms. Aiken's testimony which apparently would have stated that Ms. Aiken's testimony was her opinion and not that of an expert.

The Petitioner further testified that his attorney failed to object to the prosecution asking him "over thirty" questions "on the [car] battery issue." He testified that he believed his lawyer's failure to object to the State's questions left the jury with the impression that after the incident, he abandoned the victim on the side of the road with a bad battery for her car. The Petitioner stated, "Her car was running, I just . . . switched batteries. I knew it would take her home . . . ."

The Petitioner was questioned about an injury to his hand that he suffered prior to the crime. He responded, "I don't think it's relevant in this Post Conviction Hearing." He then declined to discuss the matter further.

The Petitioner next complained that his attorney failed to make appropriate objections during closing arguments. He claimed that "in the closing argument the prosecutor misled the jurors and confused them, simply by taking the evidence that . . . the nurse gave [and] adding words to it." The Petitioner testified that while Margaret Aiken merely stated that "she couldn't rule it out that it could happen consensually," the State stated in closing arguments that "the only way this abrasion can occur is through forced entry." The Petitioner explained, "Therefore, it's not unmistakable proof and it's not the only way it happened."

In closing, the Petitioner listed several objections that he believed his attorney should have made. He stated that his attorney "[f]ailed to object to the Court not allowing medical documents that were in plain English." The Petitioner also stated that his attorney "[f]ailed to object to the prosecutor misconduct, leading the witness, Nurse Atkins [sic]." He testified that his attorney "gave only two . . . contemporaneous objections in trial, that [he was] aware of." He stated, "I just didn't see him being an adversary in the trial at all."

Finally, the Petitioner complained that his attorney failed to raise all issues on appeal that could have been raised. Specifically, he stated that his attorney did not raise as an issue the matter of "the nurse being called a doctor."

On cross-examination, the Petitioner testified that his lawyer failed to investigate whether the Petitioner's relations with the victim were consensual. He also reported that his lawyer "only asked [the victim] a few questions" at trial. He maintained that his counsel "should have asked her was there any demand for sex. Was there any communication that he wanted to have sex with you?" The Petitioner testified that he could not recall whether he requested that his attorney ask these questions of the victim. However, despite his insistence that his lawyer erred by failing to question the victim regarding consent, the Petitioner also testified at the post-conviction hearing that he "took

[the victim] in the house against her will." He stated, "I didn't want her to leave me. I remember that."

The Petitioner testified that he met with his attorney "five, six, seven times," both while he was in custody and out on bond. He complained that his lawyer never conveyed to him any plea offers from the State. He testified, "[My attorney] asked the prosecutor at the day of trial, as we . . . was [sic] walking in toward the courtroom . . . what is your offer. And [the prosecutor] looked at him and said, there ain't one." However, the Petitioner also admitted, "I pretty much didn't want to plead guilty" and stated that soon after his arraignment, he told his attorney to set his case for trial.

With regard to the complaint in his post-conviction petition concerning his attorney's failure to inquire about the Petitioner's knowledge of the victim's sexual behavior prior to the crime, the Petitioner testified that he did not know the victim before the crime, had never engaged in sexual relations with her, and did not know anyone who had engaged in sexual relations with her in the past. He stated, "[T]hat's why I didn't bring that issue up . . . here." Concerning the complaint in his post-conviction petition that his attorney failed to allow him to present all relevant issues when he testified in his own defense, the Petitioner admitted that his attorney did not prevent him from testifying about any issues while he was on the stand.

The Petitioner's attorney responded to the Petitioner's allegations at the post-conviction hearing. Counsel testified that he had been an attorney since 1974 and estimated that he had tried at least one hundred cases over the span of his career. He stated that he was in private practice and also worked part-time as a Public Defender. Counsel reported that he was appointed to the Petitioner's case in his capacity as a Public Defender.

Counsel recalled that he had trouble maintaining contact with the Petitioner prior to trial. He testified that after the Petitioner was released on bond, there were long periods of time when he did not hear from the Petitioner. Counsel stated that he sent two letters to the Petitioner in which he informed the Petitioner of his impending trial date. In the first letter, counsel wrote: "It appears that you made bond on March the 7th, 1997, but since I haven't heard from you I can only assume you've employed private counsel and no longer need the service of the Public Defender's Office." In the second letter, counsel wrote: "If you plan on being represented by the Public Defender's Office you need to call me immediately." Counsel testified, "[J]udging from those letters and the best of [my] recollection, I had very little contact with [the Petitioner] during" the late spring and summer prior to the Petitioner's trial. He also stated that the Petitioner told him "at some point in time that he was going to try to hire private counsel."

Counsel testified that he did not represent the Petitioner in General Sessions Court, but he reported that he received a copy of notes taken by the attorney who represented the Petitioner at his preliminary hearing. Counsel also did not recall receiving a letter from the Petitioner in which the Petitioner requested that counsel obtain a copy of the preliminary hearing transcript, and he could not recall whether he ever obtained a copy of the preliminary hearing transcript or listened to an audio tape of the hearing. Although he could not recall whether the Petitioner requested that he

obtain a copy of the preliminary hearing transcript, counsel stated, "[there's] no reason why I wouldn't have [gotten a copy of the transcript] if . . . it was available." Nevertheless, counsel reported that he impeached the victim at trial using her testimony from the preliminary hearing. He stated that he had no "independent recollection" of doing so, but reported that the impeaching questions he asked were reflected in the trial record. He further testified that in February 1997, prior to the Petitioner's first trial date, he gave the Petitioner copies of all discovery documents that he had in his possession.

With regard to the Petitioner's allegations concerning the nurse that examined the victim following the incident, counsel testified that he was familiar with Margaret Aiken. He stated that she was a nurse from the Memphis Sexual Assault Resource Center and had been qualified as an expert in court many times. He acknowledged that Aiken had a Ph.D. in the area of health administration. Counsel stated that he did not object to Aiken's qualifications because he did not know of a reason to do so. He also testified that he did not recall the Petitioner asking him to object to Aiken's qualifications.

Counsel testified that he did not remember discussing the issue of trauma with the Petitioner prior to trial. He recalled, however, that the defense which he and the Petitioner decided to pursue at trial was that the sexual encounter between the victim and the Petitioner was consensual. He stated, "[T]he best of my recollection [is] that the victim had several opportunities to leave or escape or whatever you want to call it and she didn't." Counsel testified that he did not seek out an expert in the area of "trauma" because he "didn't think one was necessary." Counsel stated that he did not represent the Petitioner on appeal.

On cross-examination, counsel testified that he never spoke to the victim prior to trial, and he was not sure whether anyone from the Public Defender's Office spoke to her before trial. However, he reported that he asked an investigator to determine whether the victim had a criminal record, and the investigator found no criminal record of any type. Counsel also reported that he viewed photographs of the crime scene. Counsel testified that, to the best of his recollection, he did not interview Margaret Aiken prior to trial. He further testified that he never discussed with the Petitioner hiring a medical expert for the defense. In addition, counsel testified that he reviewed a copy of the victim's rape crisis report prior to trial.

Counsel was asked about the Petitioner's statement that was introduced into evidence at trial. Counsel testified that he could not recall if he considered having the statement suppressed prior to trial and that he did not recall the Petitioner ever asking him to file a motion to suppress the statement. He also stated, "I don't recall that we ever had a suppression hearing."

## II. ANALYSIS

The Petitioner now contends that he is entitled to post-conviction relief because he received ineffective assistance of counsel at trial. In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203. The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id. § 40-30-210(f). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

## A. Cross-Examination of Victim

-8-

The Petitioner first complains that his attorney failed to aggressively cross-examine the victim regarding consent. In its "Findings of Fact and Conclusions of Law on Petition for Post-Conviction Relief," the trial court found this assertion to be without merit. The trial court pointed out that "Petitioner's defense at trial centered on the issue of consent. Petitioner stated at his evidentiary hearing that he 'took [the victim] in the house against her will. I didn't want her to leave me.'" The trial court concluded that cross-examination is a strategic decision which lies within the discretion of counsel and which may not be measured by hindsight. The trial court also noted that "[c]ounsel must take care not to badger the witness, and in particular, the [v]ictim."

The Petitioner has failed to include in the appellate record the portion of the trial record containing the cross-examination of the victim. It is the appellant's duty on appeal to prepare an adequate record in order to allow a meaningful review. Tenn. R. App. P. 24; State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). Nevertheless, we are not precluded from considering this issue as we may take judicial notice of prior court records. See Church v. State, 987 S.W.2d 855, 859 (Tenn. Crim. App. 1998).

The trial record indicates that the Petitioner's attorney conducted a fairly lengthy cross-examination of the victim. Several of the questions asked on cross-examination were directed toward the issue of consent: The attorney asked the victim whether she "voluntarily drove with [the Petitioner] . . . to his house," and the victim responded that she did. He also asked the victim, "you weren't dragged out of the bathroom by [the Petitioner], were you?" In addition, through his cross-examination of the victim, the Petitioner's attorney emphasized that after leaving the Petitioner's home, the victim sat alone in the Petitioner's car for five or ten minutes while the Petitioner went into a well-lit convenience store, where there were "a lot of people," to buy a soft drink. Furthermore, the Petitioner's attorney pointed out inconsistencies between the victim's testimony at the preliminary hearing and her testimony at trial. Finally, we note that counsel conducted a recross-examination of the victim following further questioning by the State on redirect examination.

Based upon our review of the trial record, we conclude that the Petitioner has failed to demonstrate that his counsel was in any way ineffective in his cross-examination of the victim. It appears that the Petitioner's attorney conducted a thorough and competent cross-examination of the victim at trial. Although the Petitioner now complains that his attorney should have questioned the victim more specifically regarding the issue of consent, we note that "cross-examination is a strategic and tactical decision of trial counsel which is not to be measured by hindsight," State v. Kerley, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991), and "[a]llegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). We find this issue to be without merit.

### B. Admission of Testimony by Expert Witness

The Petitioner next argues that his attorney should have objected to Margaret Aiken's testimony at trial. With regard to this allegation, the trial court made the following findings:

Ms. Aiken . . . conducted the Victim's examination, and therefore had personal knowledge. Furthermore, Ms. Aiken filled out the reports associated with that examination. Ms. Aiken's personal knowledge therefore extended to the Victim's reports and examination. Petitioner fails to show this Court the basis for any objection to Ms. Aiken's testimony. Furthermore, Counsel testified he could think of no reason to object to Ms. Aiken's qualifications.

Ms. Aiken testified at trial as to the Victim's examination and reports, as well as injuries she typically sees among rape victims. At the time of trial, Ms. Aiken was employed as an instructor at the University of Memphis' school of nursing for twenty (20) years, and by the City of Memphis' Memphis Sexual Assault Resource Center for nineteen (19) years. It is well within her range of experience to testify to injuries typically seen among rape victims, and to the injuries sustained by the Victim in this case.

Petitioner alleges, however, that at trial the State, Counsel, and the Court all referred to Ms. Aiken as "Doctor." Reviewing the trial transcript, Petitioner is correct. However, all referred to Ms. Aiken as "Doctor" in recognition of her educational attainment; Ms. Aiken earned a doctorate in health care administration. Formal salutations in court are proper court etiquette.

(Footnotes omitted.)

Having reviewed the record, we agree with the trial court's conclusions concerning this allegation. The Petitioner has failed to show deficiency with regard to his attorney's performance concerning the admission of Margaret Aiken's testimony.

### C. Cross-Examination of State's Expert Witness

In a related issue, the Petitioner contends that his attorney "failed to: (1) aggressively cross-examine the State's expert witness regarding her qualifications, and (2) failed to aggressively cross-examine the State's expert witness regarding her testimony in chief." He states, "At no time did [counsel] object to, or challenge the expert's qualifications."

With regard to the Petitioner's allegation that his counsel failed to aggressively cross-examine Margaret Aiken concerning her qualifications, the trial court made the following findings:

Counsel testified that he had no reason to object to Ms. Aiken's qualifications. Counsel knew of Ms. Aiken, and she was qualified as an expert many times before.

-10-

Counsel also testified that he does not recall Petitioner ever asking Counsel to question Ms. Aiken's qualifications.

> Ms. Aiken has a nursing degree, a bachelor's degree, a master's degree in nursing, and a PhD. in health care administration. Ms. Aiken worked, at the time of trial, for the University of Memphis' School of Nursing for twenty (20) years, and for the City of Memphis' Memphis Sexual Assault Resource Center for nineteen (19) years.
>
> Petitioner provides no evidence that he was prejudiced by Counsel's alleged failure to aggressively cross-examine Ms. Aiken regarding her qualifications.

(Footnotes omitted.)

The trial court made the following findings concerning the Petitioner's allegation that his attorney failed to aggressively cross-examine Margaret Aiken concerning her testimony in chief:

> Petitioner's contention centers on Ms. Aiken's reference, during direct and cross-examination, to the Victim's genital trauma. Counsel testified that he does not recall Petitioner ever asking him to look into trauma.
>
> At trial, Ms. Aiken testified the Victim had "some genital trauma of a portion of the female genitals called the posterior fourchette." Ms. Aiken, on direct, testified the Victim's injury is consistent with forcible sex. On cross-examination, however, it was Counsel who elicited from Ms. Aiken that the Victim's injury may not occur ONLY during forcible sex, that it might occur during consensual sex. Counsel pursued this line of questioning during cross-examination.

(Footnotes omitted.)

As previously stated, the Petitioner has failed to provide a complete copy of the trial transcript for our review. Although it is the appellant's duty on appeal to prepare an adequate record in order to allow a meaningful review, Tenn. R. App. P. 24; State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993), we may take judicial notice of prior court records. See Church v. State, 987 S.W.2d 855, 859 (Tenn. Crim. App. 1998). We therefore have reviewed defense counsel's cross-examination of witness Margaret Aiken at trial.

Having reviewed the trial record, we agree with the findings by the post-conviction court concerning this issue. We conclude that the Petitioner's attorney conducted an effective cross-examination of Margaret Aiken. Furthermore, even assuming that the attorney's performance with regard to his cross-examination of Aiken was ineffective, the Petitioner has failed to demonstrate prejudice resulting from his attorney's performance. We find this issue to be without merit.

### D. Pre-Trial Investigation and Preparation

The Petitioner argues that his counsel failed to properly investigate his case and prepare for his trial. He contends that his attorney "failed to investigate the Victim's history, and failed to investigate the Victim's friends, failed to investigate the crime scene, failed to interview Ms. Aiken before trial, and also failed to obtain an expert to rebut the State's expert."

With regard to the Petitioner's allegation that his attorney failed to investigate the victim's history and friends, the trial court made the following comments:

> Counsel testified he requested that his investigator look into the Victim's past criminal record. Furthermore, Petitioner admitted he never had sexual relations with the Victim before the night in question. Additionally, Petitioner knew nothing of the Victim's past sexual history, nor did Petitioner know anyone with knowledge of the Victim's sexual history. Counsel also testified that Petitioner signed for, and received, a copy of the Pre-Trial investigation on February 5, 1997. This issue is without merit.

(Footnotes omitted). We find no error on the part of Petitioner's counsel in his investigation of the victim's history. However, even assuming that counsel did err by failing to further investigate the victim's history, it is unclear how further investigation would have benefitted the Petitioner's case. We conclude that the Petitioner has failed to show any prejudice resulting from his counsel's failure to investigate the victim's "history [] and . . . friends."

The Petitioner further argues that his attorney failed to investigate the crime scene. However, counsel testified at the post-conviction hearing that he viewed photographs of the crime scene. The Petitioner fails to state how he was prejudiced by the attorney's alleged failure to investigate the crime scene, and we see no evidence in the record of any such prejudice.

The Petitioner also argues that his attorney was ineffective for failing to interview Margaret Aiken prior to trial and for failing to obtain the services of an expert witness to rebut Aiken's testimony. As the trial court noted, "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The trial court concluded, "Counsel testified that he did not believe a rebuttal expert was necessary. Counsel therefore made a reasonable decision making this investigation unnecessary." (Footnote omitted). The evidence presented at the post-conviction hearing supports these findings by the trial court. We conclude that the Petitioner has failed to demonstrate that counsel was in any way ineffective in his preparations for trial.

## E. Questioning by State Concerning Car Battery

The Petitioner next argues that his attorney "failed to object to extensive prejudicial witness examination and argument regarding the swapping of Petitioner's [car] battery for that of the victim." However, we note that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility . . . ." Tenn. R. Evid. 611(b). We also note that "the scope of cross-examination is largely within the trial court's discretion, and . . . such discretion will not be disturbed absent a finding of abuse." State v. Bragan, 920 S.W.2d 227, 244 (Tenn. Crim. App. 1995). We find no error on the part of the Petitioner's attorney by failing to object to questioning about the car battery. We thus find this issue to be without merit.

### F. Defense Strategy

The Petitioner complains that his attorney failed to discuss defense strategy with him. As the trial court noted, "[t]he Petitioner's defense theory centered on his innocence, that the sexual encounter was consensual." The trial court made the following findings concerning this allegation: "Petitioner fails to articulate any shortcomings with respect to defense strategy. Petitioner did state 'it had a lot to do with me.' Petitioner admitted he was not 'straight up' with Counsel. Petitioner 'may not claim error for circumstances which he himself created.' Shuttle v. State, 1995 WL 521000, at *3 (Tenn. Crim. App.)." (Footnotes omitted). We also note, as did the trial court, that "[c]ounsel testified the defense centered on consensual sex, that the Victim had several opportunities to leave." In addition, according to the Petitioner's testimony, the Petitioner and his attorney met five to seven times prior to trial. The trial court concluded that the Petitioner's allegation that his lawyer failed to discuss defense strategy with him is merely conclusory, and we agree. Conclusory allegations, unsupported by facts, are subject to dismissal. Caruthers v. State, 814 S.W.2d 64, 69-70 (Tenn. Crim. App. 1991).

### G. Inquiry into Knowledge of Victim's Prior Sexual History

The Petitioner contends that his counsel should have inquired into the Petitioner's knowledge of the victim's sexual behavior prior to the crime. In sex offense cases, evidence of a victim's past sexual behavior is generally inadmissible. See Tenn. R. Evid. 412(b)-(c). The Petitioner fails to point out any exception to this rule that is applicable to his case. See Tenn. R. Evid. 412(c).

The Petitioner offered no evidence at the post-conviction hearing indicating that the victim's past sexual behavior was in any way relevant in this case. The Petitioner instead testified that he did not know the victim prior to the crime, that he had never engaged in sexual relations with her before the night of the crime, and that he did not know anyone with whom the victim had previously engaged in sexual relations. We thus conclude that counsel did not err by failing to inquire about the Petitioner's knowledge of the victim's previous sexual behavior. Furthermore, even assuming

error on counsel's part in failing to inquire into the victim's sexual history, the Petitioner has failed to demonstrate prejudice resulting from any such failure.

## H.  Preliminary Hearing Transcript

The Petitioner complains that his attorney failed to obtain a copy of the preliminary hearing transcript before trial.  He argues that if his attorney had obtained the transcript, "his cross-examination of the Victim would have been more effective."

Counsel could not recall whether the Petitioner asked him to obtain a copy of the preliminary hearing transcript. He also could not recall whether he reviewed the transcript of the Petitioner's preliminary hearing.  Nevertheless, although counsel had no specific recollection of reviewing the transcript, counsel testified at the post-conviction hearing that he could think of no reason that he would not have reviewed the preliminary hearing transcript if it was available to him.  Counsel also reported that he reviewed notes taken by the attorney who represented the Petitioner at the preliminary hearing.  Finally, counsel testified that he impeached the victim with regard to inconsistencies between her testimony at the preliminary hearing and her testimony at trial.

The trial court found the allegation that counsel failed to obtain a copy of the preliminary hearing transcript to be "merely conclusory," stating, "Petitioner fail[ed] to provide evidence supporting his factual allegation."  The trial court thus dismissed the allegation. See Caruthers, 814 S.W.2d at 69-70.  Having reviewed the record, we conclude that the preponderance of the evidence presented at the post-conviction hearing is not contrary to the trial court's findings with regard to this issue.  We conclude that the Petitioner has failed to show error or any resulting prejudice on the part of his counsel concerning the preliminary hearing transcript.

## I.  Evidence of Injury to Defendant's Hand

The Petitioner complains that his attorney failed to offer evidence at trial of an injury to the Petitioner's hand.  However, at the post-conviction hearing, the Petitioner refused to discuss this issue, stating, "I don't think it's relevant in this Post Conviction Hearing."  The trial court therefore concluded that the Petitioner waived this issue for purposes of post-conviction review.  We agree.

## J.  Closing Arguments

The Petitioner contends that his counsel was ineffective during closing arguments in two respects: He first argues that his counsel "should have argued the weight of Ms. Aiken's testimony, in particular with respect to the Victim's genital trauma."  The Petitioner also contends that his

counsel was ineffective for failing to object to the State's definition of "reasonable doubt" during closing arguments.

A transcript of opening and closing arguments is included in the appellate record. The record shows that Petitioner's counsel did comment on Margaret Aiken's testimony during closing arguments. Counsel first pointed out that while examining the victim after the incident, Aiken found no sperm. He then stated, "On the report there was a couple of scratches, a scratch on the left clavicle and a scratch on the upper left arm. No bruises. Nothing from that examination by Dr. Akin that would indicate any bruises. No bloody trauma. No bruises."

The record also shows that the State made the following comments during closing arguments:

[Counsel] has said that there were inconsistencies like were the lights on in the house, were the lights off. Were they there an hour or were they there 30 minutes? Were they there 20 minutes? The inconsistencies and the discrepancies, ladies and gentlemen, in order to give you reasonable doubt need to be material. Are those material? We know that [the victim] and the Defendant were at that house. We know that they had a sexual encounter. We know they were there for some period of time and then left. Is that a material discrepancy? The issue here for you ladies and gentlemen is whether this was a forced sexual encounter. Whether this was rape on behalf of the Defendant.

In its "Findings of Fact and Conclusions of Law on Petition for Post-Conviction Relief," the trial court made the following comments regarding the Petitioner's contention that his counsel should have objected to the State's definition of "reasonable doubt":

In the instant case, Petitioner claims Counsel should have objected to the State's definition of "reasonable doubt" during closing argument. The State did not attempt to define reasonable doubt. Rather, the State illustrated to the jury that testimony varied only slightly as to time, and not at all as to the place and the occurrence of a sexual encounter between the Petitioner and the Victim.

Furthermore, in his jury instructions, the Honorable James C. Beasley, Jr. told the jury "the Court is the proper source from which you are to get the law." Additionally, the Honorable Judge Beasley told the jury, "[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and applying the law, but they are not evidence." The jury is presumed to adhere to the judge's instructions. State v. Brewer, 932 S.W.2d 1, 27 (Tenn. Crim. App. 1996) (citing State v. Johnson, 762 S.W.2d 110, 116 (Tenn. 1998)).

This Court concludes that the State's reference to reasonable doubt was within the leeway permitted during closing argument. Furthermore, Judge Beasley's instructions to the jury cured any potential confusion regarding the State's closing argument. Accordingly, Petitioner's assertion is without merit.

(Footnotes omitted).

We find no error of any type on the part of counsel during closing arguments. Generally, counsel are permitted great latitude during closing arguments. State v. Dooley, 29 S.W.3d 542, 552 (Tenn. Crim. App. 2000). Counsel in this case acted within the range of competence demanded of attorneys in criminal cases during closing arguments. This issue is without merit.

## K.  Appeal

The Petitioner argues that his appellate counsel failed to "raise all probable issues on appeal." No testimony was offered on this issue at the post-conviction hearing, apparently because the Petitioner's appellate counsel was not present for the hearing. The Petitioner's testimony was thus the only evidence presented at the post-conviction hearing concerning this matter. At the hearing, the Petitioner specifically complained that his appellate attorney failed to raise as an issue "the nurse being called a doctor."

The trial court made the following findings concerning this allegation:

Petitioner's assertion is without merit. On appeal, Tony Brayton, of the Shelby County Public Defender's office, represented Petitioner. Petitioner asserts Mr. Brayton provided ineffective assistance because Mr. Brayton failed to raise all probable issues on appeal. "[T]here is no constitutional requirement that an attorney argue every issue on appeal.["] Campbell v. State, 904 S.W.2d 594, 596-97 (Tenn. 1995) (citing Jones v. Barnes, 463 U.S. 745, 750-51, 103 S.Ct. 3308, 77 L.Ed.2d 987, 992-993 (1983); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993)). The issues to raise on appeal are within appellate counsel's "professional judgment and sound discretion." Id. at 597 (citations omitted). "[W]hich issues to raise on appeal can be characterized as tactical or strategic choices. . ." Id. at 597 (citations omitted). The issues raised by Counsel on appeal are well within the acceptable range of competence demanded of attorneys in criminal cases.

Evidence presented at the post-conviction proceedings does not preponderate against these findings by the trial court. Accordingly, we find this issue to be without merit.

We conclude that the services rendered by Petitioner's counsel were well within the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936. Furthermore, even assuming that counsel's performance was deficient, we are unconvinced that "but for counsel's error, the fact finder would have had reasonable doubt regarding the [P]etitioner's guilt." Strickland, 466 U.S. at 695. We therefore AFFIRM the judgment of the post-conviction court.

_____

ROBERT W. WEDEMEYER, JUDGE